CHATTANOOGA *v.* DOWLING.

(*Knoxville.*    October 8, 1898.)

1. MUNICIPAL CORPORATIONS. *Liable for creation of nuisance.*

A municipality, in pursuing a public work, is not privileged to commit a nuisance to the special injury of a citizen, and, if it does, it must, as a private individual, respond in damages therefor. (*Post, pp. 344, 345.*)

Cases cited: Burtram *v.* Chattanooga, 7 Lea, 739; 13 Wall., 166; 51 N. H., 504 (S. C., 12 Am. Rep., 147); 7 Gray, 100; 79 N. Y., 470 (S. C., 35 Am. Rep., 540).

2. ACTIONS. *Successive maintainable, when.*

A nuisance arising from the discharge of a city's sewerage near private property is a recurring one, and will sustain successive actions where the plan for sewers adopted by the city contemplates the discharge of the sewerage at another point, and its discharge at the point in question is apparently only temporary. (*Post, pp. 345–347.*)

Cases cited: Carriger *v.* Railroad, 7 Lea, 388; Harmon *v.* Railroad, 87 Tenn., 614; Nashville *v.* Comar, 88 Tenn., 418; 101 N. Y., 98.

---

FROM  HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

SHEPHERD & FRIERSON for Chattanooga.

W. B. GARVIN for Dowling.

BEARD, J.    The defendant is the owner of a lot in the city of Chattanooga, very near which termi-

Chattanooga *v.* Dowling.

nates a sewer constructed by that city at much expense, through the mouth of which much loathsome sewerage is deposited upon the defendant's land, greatly depreciating its rental value, as well as the value of the soil upon it, theretofore used by its owner for the purpose of making brick.

The record discloses that in three different suits, instituted by Dowling from time to time, he had made recoveries against the municipality for the injuries resulting to this land, as from a continuing nuisance, and that when the present bill was filed, he had begun a fourth suit to recover for the same nuisance, such damage as had accrued to him since the commencement of the third and last action. The present bill was filed upon the theory that Dowling's injury, if any had been received by him, was permanent in its character, and that the recoveries already obtained by him, as a matter of law, precluded him from maintaining another action for the same injury; especially was it insisted that this was the effect of the third suit and recovery, as it was averred that the measure of damages then set up and obtained was for a permanent injury. Accordingly, complainant asked that he be enjoined from prosecuting the then pending suit, or any other suit against the complainant for the same cause of action.

So far as the recovery in the third of these successive actions is concerned, it is only necessary to say that it is clear, from the record, that it

embraced only the damage sustained by Dowling up to the commencement of that action, and the use of the word "permanent" in his declaration was not intended to and did not carry his claim further than that; and there is no pretense that the other suits did anything more.

The insistence, however, is made that whatever may have been the purpose of his previous litigation, yet such is the character of the work done by the city in the construction of the sewer, as well as its lawfulness under its charter, that a recovery, as a matter of law, could be made only on the basis of a permanent injury, and that Dowling is estopped from maintaining his present suit, even if he had heretofore failed to recover his entire damages.

It clearly appears that the sewer in question formed a part of a plan or system projected for the city of Chattanooga; that the purpose of the authorities was to extend it to a place very much beyond the property of Dowling, where its contents would be discharged into a creek, and thence into the Tennessee River, but, for reasons satisfactory to these authorities, it was left in its present unfinished condition; that, as far as the work has progressed, it has been well and regularly done, in a form that is permanent, and under the authority of law.

It may be taken for granted that the power of the city of Chattanooga to construct this sewer did not involve the right to so construct it as that its offensive contents would be frequently, if not con-

tinuously, discharged upon Dowling's land. The authorities agree that a municipality in pursuing a public work is not privileged to commit a nuisance, to the special injury of the citizen, and if it does, it must, as would a private individual, respond in damages therefor. *Burtram* v. *Mayor & Aldermen of Chattanooga*, 7 Lea, 739; *Pumpelly* v. *Green Bay Co.*, 13 Wall., 166; *Eaton* v. *B. C. & M. R. R. Co.*, 51 N. H., 504 (S. C., 12 A. R., 147); *Proprietors of Locks* v. *Lowell*, 7 Gray, 100; *Nooman* v. *City of Albany*, 79 N. Y., 470 (S. C., 35 A. R., 540); Dillon on Mun. Cor., Sec. 1047.

But the question here presented is, conceding the liability of the city to suit for the injury complained of, should all the damages have been recovered in one action by the injured party, or can he maintain successive suits until the nuisance is abated?

*Carriger* v. *Railroad Co.*, 7 Lea, 388, was an action against a railway company for so carelessly constructing its road as to cause the plaintiff's land to overflow. The embankment which impeded the natural flow of the water, and threw it back on the land of the plaintiff, was built on the company's right of way, under the authority of its charter, and it was permanent in its character, yet it was said by this Court that "each overflow caused by the negligence, carelessness, or want of skill of the defendant, or its agents, is an independent wrong, and a cause of action for the damages resulting therefrom to the

crops and other property of the rightful possessor of the soil or premises."

In *Harmon* v. *Railway Co.*, 87 Tenn., 614, it was held that if a railway company, lawfully located upon a street in a city under its charter, and by permission of the local government uses the street beyond what is necessary for the proper running of its trains, and by such excessive and improper use substantially affects the easement of way and of ingress and egress appurtenant to an abutting lot, the owner of such lot can maintain successive actions for such nuisance, recovering the damages that have accrued up to the time each action is instituted, and a recovery in one action will not bar a subsequent one brought for a continuance of these wrongs.

The opinion in that case was rested largely upon the leading case of *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y., 98, in which it was held that where a railroad corporation or municipality, under proper authority, erects an embankment in a street, if the work be carefully and skillfully done, it cannot be made liable for the consequential damages to adjacent property; but if it be carelessly and unskillfully done, it can be made liable, in successive actions, until the nuisance is abated.

But if any doubt remained as to the rule, in cases of this sort, in this State, we think it was set at rest in *Nashville* v. *Comar*, 4 Pickle, 418. In that case the city of Nashville had constructed a sewer along one of its streets, the supposed defect

of which seemed to be that it had not capacity suf-
ficient to carry off the storm water flowing into it,
so that, upon occasions, the pressure of accumulative
sewerage and storm water had been so great as to
back or throw the contents of a smaller and tribu-
tary sewer of Comar, on his premises. On the trial
the Circuit Judge told the jury that in such a case
the measure of damages was "the difference in mar-
ket value of the property before and since the build-
ing of the sewer." This charge of the trial Judge
was maintained in argument by the counsel of Comar
as correct, upon the suggestion that the sewer was
a permanent improvement, and whatever damage it
occasioned was of a permanent character, and it was
therefore insisted that, for this reason, he could only
bring one action, rather than successive actions, and
must recover damages once for all. This view was
rejected by this Court, as being based upon "the
assumption that the premises of Comar will, for all
time to come, be subjected to the same disgusting
invasions of sewerage as have heretofore occurred."
Continuing, this Court said: "The complaint is not
that the city has been guilty of any misconduct in
erecting a sewer where this has been constructed,
but that its servants have so unskillfully built it
that upon the occurrence of unusual conditions it dis-
charges its contents upon the premises of defendant in
error. Now, upon what authority is it to be assumed
that the negligence or unskillfulness of the servants
of the city, in the construction of this sewer, will

not be remedied?" After a careful examination of
the cases, and a repudiation of the measure of dam-
ages adopted by the trial Judge, that opinion an-
nounces "that the true rule, deducible from the
authorities, is, that the law will not presume the
continuance of wrong, nor allow a license to con-
tinue a wrong, when the cause of the injury is of
such a nature to be abatable, either by the expen-
diture of labor or money; and that where the cause
of the injury is one not presumed to continue, that
the damages recoverable from the wrongdoer are only
such as have accrued before action brought; and
that successive actions may be brought for the subse-
quent continuance of the wrong or nuisance."

The principle here so distinctly stated disposes of
the contention of complainant in the case at bar;
for the insistence of Dowling is, not that the city
of Chattanooga had no right to erect this sewer,
nor that it is not expensively and permanently
done, as far as it has gone, but, rather, that the
sewer has been negligently and unskillfully stopped
at its present point of termination, so that the
necessary result is to flood his land with its con-
tents, to his serious detriment.

To hold that, for such a nuisance, the injured
party could have only one action, in which he
must recover all his damages, past and prospective,
would not only be to assume that the wrongdoer
will always persist in his misconduct, but would be,

in effect, to give him a license to continue in it. The Courts will do neither.

Without prolonging this opinion by an analysis of the cases cited by complainant as holding to a contrary view, we are satisfied that the Court of Chancery Appeals was right in reaching this conclusion, and the decree of that Court is therefore affirmed.