Argued May 12; affirmed May 26; rehearing denied June 23, 1936

# WILSON *v.* CITY OF PORTLAND
## (58 P. (2d) 257)

*Frank S. Grant,* City Attorney, and James West, Deputy City Attorney, both of Portland, for appellant.

*B. G. Skulason,* of Portland (J. S. Middleton, of Portland, on the brief), for respondents.

BELT, J. These three cases, consolidated on appeal, arose out of a nuisance created by the defendant city in dumping garbage into a deep ravine adjacent to the property owned in the entirety by Samuel V. Wilson and his wife, Maggie Wilson. There is no bill of exceptions. The decision hinges upon whether the court erred in denying the motions of the defendant for judgment on the pleadings.

The first action was brought in the district court for Multnomah county by Wilson and his wife to recover damages on account of the loss of rental of the three houses owned by them. It was alleged in the complaint, in substance, that the defendant made a so-called "sanitary fill" on the westerly side of Interstate avenue at Beech and Fremont streets in the city of Portland near the property of the plaintiffs; that defendant in so doing created and maintained a nuisance in that it caused and permitted "poisonous, offensive smells, fumes and odors" to pollute the atmosphere near and upon their premises rendering the same uninhabitable and destroying the rental value thereof in the aggregate sum of $440.

The defendant answered admitting the dumping of the refuse into the fill in question and conceding that the odors and fumes of decaying vegetation were "somewhat offensive on and near the fill"; but denied that the fumes were poisonous or that they sufficiently polluted the atmosphere to interfere with the occupancy of the premises owned by the plaintiffs or that plaintiffs sustained any loss of rental by reason thereof.

While this action was pending Maggie Wilson commenced a separate action in the district court to recover damages on account of the dumping of garbage in the ravine, alleging that the defendant "wrong-

fully and unlawfully has permitted poisonous and offensive smells, fumes and odors to escape from said fill and to pollute the atmosphere in the vicinity and surrounding the aforesaid property occupied by the plaintiff and has permitted said fumes, smells and odors to penetrate the said residence occupied by the plaintiff and has thereby greatly interfered with the plaintiff's comfort and enjoyment of her said premises by preventing normal sleep, contaminating food, rendering the air foul and unfit to breathe and causing a deposit of dirt and grime on all exposed surfaces both on the inside and on the outside of said house, all to her damage in the sum of $1,000''. A similar action was commenced by Samuel Wilson based upon substantially the same allegations of fact as made by his wife. The Maggie Wilson case was heard in the district court on its merits and a judgment rendered in favor of the defendant city. Thereupon the plaintiff appealed to the circuit court.

Thereafter the defendant filed a supplemental answer in the first action brought by Wilson and his wife for loss of rental, alleging as a plea in bar the judgment obtained by the city in the Maggie Wilson case. The court, after denying motion for judgment on the pleadings, entered judgment in favor of plaintiffs for $84. The defendant city appealed to the circuit court.

In the Samuel Wilson case the defendant answered by way of plea in abatement that the plaintiff and his wife were owners by the entirety of the real property in question and that they had instituted an action against the defendant for loss of rent based upon the identical reasons alleged in the complaint. The court, after denying motion for judgment on the pleadings,

entered judgment in favor of the defendant. The plaintiff appealed to the circuit court.

The circuit court, sitting without a jury, in the case of *Wilson et ux. v. City of Portland*, denied motion for judgment on pleadings and entered judgment for plaintiffs in the sum of $140 on account of loss of rentals. The two other cases were consolidated on trial in the circuit court, motions for judgments on the pleadings were denied, and a judgment in each case was entered in favor of the plaintiff therein for the sum of $50.

■■ Under the pleadings of the plaintiffs in each of the above cases, it must be assumed for the purpose of consideration of the legal question presented on this appeal that the city created and maintained a nuisance on its property as alleged. The city does not question the amount of damages—indeed, it could not on a motion for judgment on the pleadings.

■ The contention of the city is that all of the cases involved damage to real property and that such matter could and ought to have been determined in one action. In other words, the city asserts that there has been a splitting of the cause of action which arose out of a single tort. If this premise is sound—viz, that all the cases concern injury to property—the contention of the city must be upheld. The plea of res adjudicata would constitute a bar as there would be a merger of the judgments. If, however, the cases of *Maggie Wilson v. City* and *Samuel Wilson v. City*, involved injury to the person, the plea of res adjudicata would not be well taken. An injury to the person of Samuel Wilson may be separate and distinct from an injury to the person of his wife. They may not be similarly affected by the fumes and odors coming from this fill

adjacent to their property. Furthermore, it has been recently held by this court that, under section 1-811 (subdivision 8), Oregon Code 1930, it is not mandatory to join a cause of action arising from injuries to the property with one arising from injury to the person even though caused by the same wrongful act or omission. See *Winters v. Bisaillon,* ante p. 509 (57 P. (2d) 1095).

We concede it is difficult to ascertain from the complaints in the Maggie Wilson case and that of her husband whether the pleader was complaining of injury to property or person, but it is believed that the allegations are sufficiently broad and comprehensive to include both. The allegations that the odors and fumes ''interfered with the plaintiff's comfort and enjoyment of his said premises by preventing normal sleep'' and ''rendered the air foul and unfit to breathe'' pertain to an invasion or interference with the personal rights of the plaintiffs. It is observed that there is no allegation that such fumes and odors caused sickness or any objective physical injury. However, we think a person is entitled to enjoy the comforts and pleasures of his home without being compelled in this modern age to breathe foul fumes and odors coming from an *unsanitary* fill. Notwithstanding there was no sickness or expense incurred for medical services, we think plaintiffs have shown at least a nominal damage. Concluding that the pleadings, viewed in their most favorable light, disclose a wrongful invasion of the personal rights of the plaintiffs it follows that the plea of bar of judgment can not be sustained.

Eliminating the question of res adjudicata, the city concedes that the plaintiffs would be entitled to recover damages for injury to their property in that such nuisance would constitute a taking of property within the

meaning of the constitution, but asserts that, since in the disposal of garbage it is acting in a governmental capacity, there can be no recovery for personal injury. There is great conflict among the authorities on this question. Some courts limit the damage to diminution in value or use of property, depending upon whether the nuisance is permanent or temporary in character: *City of Louisville v. Hehemann,* 161 Ky. 523 (171 S. W. 165, L. R. A. 1915C, 747); *Hines v. City of Rocky Mount,* 162 N. C. 409 (78 S. E. 510, L. R. A. 1915C, 751 Ann. Cas. 1915A, 132); *Metz v. City of Asheville,* 150 N. C. 748 (64 S. E. 881, 22 L. R. A. (N. S.) 940). On the ground of so-called public policy these courts seem to consider property more precious in the sight of the law than the physical health and comfort of a human being. Other courts allow damage to the person when caused by a nuisance created and maintained by a municipal corporation: *Fort Worth & R. G. Ry. Company v. Glenn,* 97 Tex. 586 (80 S. W. 992, 65 L. R. A. 818, 1 Ann. Cas. 270, 104 Am. St. Rep. 894); *Hosmer v. Republic Iron & Steel Company,* 179 Ala. 415 (60 So. 801, 43 L. R. A. (N. S.) 871); *Oklahoma City v. Tytenicz,* 171 Okla. 519 (43 P. (2d) 747); *Boyd v. City of Oskaloosa,* 179 Iowa 387 (161 N. W. 491); *Chattanooga v. Dowling,* 101 Tenn. 342 (47 S. W. 700); *Mayor of Knoxville v. Klasing,* 111 Tenn. 134 (76 S. W. 814); *City of Wylie v. Stone* (Tex.), 16 S. W. (2d) 862; *City of Harrisonville v. Dickey Clay Mfg. Co.,* 61 F. (2d) 210. The question is new in this jurisdiction.

In our opinion a city has no more right than an individual to create and maintain a nuisance on its own property; and if it does so it is subject to the same liability as an individual: *Miller v. City of Woodburn,* 134 Or. 536 (294 P. 349). As stated in 20 R. C. L. 424:

"It is generally conceded that a municipality has no more right to maintain a nuisance than an individual, and is equally liable for injuries resulting therefrom."

Neither do we think that a city is acting in a governmental capacity or in the performance of any public duty in the creation or maintenance of a public nuisance, but is rather acting in violation of its public duties: *Roth v. Dist. of Columbia*, 16 App. D. C. 323. Can it be that a city is acting for the public welfare when it dumps putrid and foul smelling garbage and refuse within 300 feet of a person's home, rendering it an unfit place in which to live? In 19 R. C. L. 1084, it is said:

"A municipal corporation as an owner of land owes the same obligations to the owners of neighboring land with respect to the use of its own, except so far as it has specific authority from the legislature to the contrary, as that of any private owner of land, and it is accordingly well settled that if a municipal corporation makes such use of its own land as to constitute a private nuisance at common law it is liable to the owner of land specially injured by such nuisance, without regard to the character of the use which the municipality is making or whether it is engaged in a governmental or private function." Citing in support of the text numerous authorities.

We approve the rule thus stated in 43 C. J., § 1734:

"Where a municipal corporation creates or permits a nuisance by nonfeasance or misfeasance, it is guilty of tort, and like a private corporation or individual, and to the same extent, is liable for damages in a civil action to any person suffering special injury therefrom, irrespective of the question of negligence; and such liability can not be avoided on the ground that the municipality was exercising governmental powers. * * *."

 To maintain an action on account of a public nuisance the party complaining must show that he has sustained an injury of a special character, distinct and different from that suffered by the public generally: 20 R. C. L. 460. The proximity of the plaintiffs' home to the fill in question tends to show a special injury. The special injury to afford a basis for damages, other than nominal damages, must be of a substantial character. We do not intend to hold that the city can be held liable in damages for every slight inconvenience or discomfort resulting from a nuisance causing obnoxious odors or fumes.

No error was committed in denying the motions for judgment on the pleadings. It follows that the judgments entered by the circuit court are affirmed.

CAMPBELL, C. J., and BEAN and KELLY, JJ., concur.